**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**PHELEISA WOODS** **PLAINTIFF**

**v.** **NO. 4:26-cv-00057-BSM-PSH**

**FRANK J. BISIGNANO, Commissioner of the Social Security Administration** **DEFENDANT**

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

In this case, filed pursuant to 42 U.S.C. 405(g), plaintiff Pheleisa Woods ("Woods") challenges the denial of her application for disability insurance benefits. Woods does so on the ground that the Administrative Law Judge ("ALJ") failed to "explain why the mild limitations he found in all four Paragraph B areas of mental functioning did not translate into any corresponding mental limitations in the residual functional capacity assessment." See Docket Entry 8 at CM/ECF 2. Because substantial evidence on the record as a whole supports the ALJ's decision, and the decision is not based on any legal error, his decision should be affirmed and this case dismissed.[1]

The ALJ evaluates an application pursuant to a sequential evaluation process, two parts of which are relevant here. At step two, the ALJ must identify the claimant's impairments and determine if they are severe. An impairment is severe if it has more than a minimal effect on the claimant's ability to work. See Henderson v. Sullivan, 930 F.2d 19 (8th Cir. 1992).

[1] The question is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the [ALJ's] conclusion." See Id. Legal error can be a procedural error, the use of erroneous legal standard, or an incorrect application of the law. See Lucus v. Saul, 960 F.3d 1066 (8th Cir. 2020).

The ALJ must also assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite her limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The ALJ does so by considering all the evidence. See Grindley v. Kijakazi, 9 F.4th 622 (8th Cir. 2021). In making the determination, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. 404.1545(a)(2), Social Security Ruling 96-8p.

The ALJ summarized the evidence relevant to step two and Woods' residual functional capacity. See Transcript at 26-29 (step two), 29-34 (residual functional capacity). There is no serious dispute about the evidence, although Woods alleges that her work history was misstated. See Transcript at 11 at CM/ECF 4. That dispute is of little consequence in this Recommendation. The only real dispute involves the interpretation and/or application of the evidence. The ALJ's summary of the evidence will not be repeated, but some of it will be noted in order to place Woods' assertion of error in an historical context.

Woods was born on May 19, 1966, and was fifty-eight years old on May 31, 2024, the alleged onset of disability date. She alleged that she became disabled and unable to work because of impairments that include depression, anxiety, and panic attacks.

Woods has a history of a mental impairment, sometimes identified as an adjustment disorder with additional features, see, e.g., Transcript at 815, and at other times as a generalized anxiety disorder, see, e.g. Transcript at 662. She sought professional help for her impairment during the period leading up to and after the alleged onset of disability date.

For instance, Woods sought care for her mental impairment at Veterans Administration ("VA") facilities between 2022 and 2025. See Transcript at Exhibits 1F (388-420), Exhibit 8F (615-648), 12F (693-748), 13F (782-866). The progress notes reflect that she complained of, inter alia, difficulties sleeping, eating, and concentrating. See, e.g., Transcript at 390, 619, 821. She also reported fatigue, sadness, nervousness, irritation, and fear. See, e.g., Transcript at 644, 821. Her symptoms were caused, or exacerbated, by a series of tragic losses in her life, having lost a brother, grandson, brother-in-law, and father-in-law in a short period of time. See, e.g., Transcript at 821. Woods, a teacher, also lost a fourteen-year-old student Woods was mentoring. See, e.g., Transcript at 856. Woods additionally experienced work-related, health, and legal stressors that contributed to her depression and anxiety, see, e.g., Transcript at 390, 625-626, 726, 747-748. She experienced occasional panic attacks and had one in 2024 that required emergency room care. See Transcript at 399-404.

Upon examinations, Woods typically had a stable mood; was orientated to person, place, time, and situation; and had a logical/linear and goal directed thought process. See, e.g., Transcript at 391, 411, 621, 643, 647, 697, 701, 722, 727, 732, 783, 807, 823, 836, 857. Her memory, attention, and concentration were typically intact, and she did not display any significant cognitive deficits in her judgment or insight. See, e.g., Id. She was treated with therapy and medication that included Wellbutrin, Bupropion, and trazodone. See, e.g., Transcript at 856, 718. Woods reported that her mood "mostly improved" with medication, see, e.g., Transcript at 856, although she occasionally reported a "down" or "worsening" mood, see, e.g., Transcript at 391, 827.

Beginning in what appears to have been June of 2023 and continuing through at least January of 2024, Woods sought counseling from Russell W. Meadows ("Meadows"), a licensed professional counselor. See Transcript at 660-682. Woods reported symptoms of depression and anxiety, largely arising from the extremely unfortunate circumstances in her life. Meadows' mental status examinations of Woods were typically unremarkable. Although Woods was depressed and her affect was typically sad and/or anxious, she was capable of focused, sustained attention; had no cognitive or comprehension impairment; and could follow directions.

The findings and observations of the VA professionals, and those of Meadows, are consistent with the findings and observations of other professionals. For instance, Dr. Mark Peterson ("Peterson") saw Woods in 2024 for a panic attack. See Transcript at 471-475. Woods complained of chest pains, feelings of impending doom, lightheadedness, palpitations, increased perspiration, and shortness of breath. Upon examination, her mood was anxious, but she was alert, fully oriented, and had good insight.

In October of 2024, Woods completed a function report as a part of her application. See Transcript at 276-283. The reports reflects that she lives alone. She can attend to her personal care but does so slowly. She needs help remembering to take her medication and sometimes does not take it at all. Woods can prepare simple meals, but it typically takes her thirty minutes to do so. She can perform most household chores, including cleaning and doing laundry. She can drive an automobile and can leave her house. Although she shops, she does so primarily on her computer. She can pay her bills, handle a savings account, and use a checkbook. Woods spends time with others, doing so in person and via the telephone, text, and video chat. She attends church about three times a month. She can pay attention for about thirty minutes and can follow simple written and spoken instructions.

In November of 2024, Dr. Amanda Smith, M.D., ("Smith") performed a mental diagnostic evaluation of Woods. See Transcript at 558-564. Woods reported no limitations in her basic activities of daily living and reported no difficulty performing household chores. She exhibited an appropriate affect and communicated in an effective, focused, organized, and relevant manner. She exhibited no deficits in coping, concentration, or persistence, and completed cognitive tasks within a reasonable timeframe. Smith opined that Woods would have no limitations performing basic work-like tasks.

Woods testified during the administrative hearing. See Transcript at 45-75. As a part of her testimony, she described her depression, which she reported causes, inter alia, suicidal thoughts, loss of appetite, and insomnia. She also reported difficulties concentrating.

The ALJ found at step two that Woods had severe impairments in the form of mild degenerative disc disease with spondylosis and obesity. The ALJ found that Woods' mental impairment was not severe, as she only had mild limitations in the four "Paragraph B" areas of mental functioning, those areas being understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. The ALJ summarized his finding as follows:

> Overall, ... [Woods] has a history of mental disorders ... [She] did experience an increase in symptoms due to bereavement and work stress around the time of her alleged onset date, but the increase in symptoms did not cause significant cognitive decline. Mental exams showed intact cognitive functioning despite [her] symptoms. ...

See Transcript at 29.

The ALJ then assessed Woods' residual functional capacity and found that she is capable of performing the full range of medium work. In so finding, the ALJ noted Woods' mental impairment. See Transcript at 31.[2] The ALJ did not, however, account for any limitations caused by the impairment. He did so on the basis of his belief that Woods' statements about the severity of her limitations were not fully credible and were largely contrary to the medical evidence.

Having assessed Woods' residual functional capacity, the ALJ found that Woods could return to her past relevant work as a teacher, coach, or supervisor of guidance/testing. Because Woods could, the ALJ concluded that Woods is not disabled within the meaning of the Social Security Act.

---

[2] Specifically, the ALJ noted the following:

> [Woods] reported that various events in her life over the past few years had resulted in depression and anxiety. [She] reported that the disorders result in symptoms that would prevent her from being able to work, such as crying episodes, social avoidance, and concentration problems. She indicated that her cognitive skills had declined.

Woods maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole. Woods so maintains because the ALJ failed to explain why the mild limitations he found at step two did not "translate into any corresponding mental limitations in the residual functional capacity assessment." See Docket Entry 8 at CM/ECF 2. In support of the assertion of error, Woods notes that "[w]hile an ALJ is not required to impose mental limitations [in the assessment] just because [he] found some level of mental impairment, ... where an [assessment] entirely ignores a person's mental impairments, error attaches." See Docket Entry 8 at CM/ECF 6. In a reply brief, Woods offered the following clarification of her assertion:

> Plaintiff's actual argument is that where an ALJ finds that a claimant is limited in mental functioning, the ALJ must either incorporate those limitations into the RFC or provide a reasoned explanation for their omission. See 20 C.F.R. § 404.1545(a); SSR 96-8p (the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion," and the adjudicator "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). The ALJ did neither. He found mild limitations in all four paragraph B domains (Tr. 27-28)—then assessed an RFC for the full range of medium work without a single mental restriction (Tr. 29) and without any explanation for the omission.

See Docket Entry 11 at CM/ECF 3.

The question here is not whether Woods has a mental impairment. She does. The first question, one at step two, is whether the impairment is severe. The answer to the question lies in the medical evidence, as the step two determination is strictly a medical one. See Bowen v. Yuckert, 482 U.S. 137 (1987). As noted in the medical evidence recounted below, there is little evidence that Woods' mental impairment has more than a minimal effect on her ability to work. The ALJ could find as he did at step two, as his finding is supported by substantial evidence on the record as a whole.

The second question, one at the heart of this case, involves a determination of the most Woods can do despite her limitations. That determination is different than the one at step two, and the ALJ is not required to include limitations in a residual functional capacity assessment based on his "Paragraph B" findings. See Smith v. Bisgnano, No. 3:25-cv-00071-BSM-JJV, 2026 WL 67143 (E.D.Ark. Jan. 8, 2026), report and recommendation adopted sub nom. Smith v. Social Security Administration, No. 3:25-cv-00071-BSM, 2026 WL 416921 (E.D.Ark. Feb. 13, 2026).[3]

[3] "As a practical matter, ... the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." See Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006) ..." See Smith v. Bisgnano, 2026 WL 67143, at 2.

In this instance, the ALJ did not incorporate any mental limitations into the assessment of Woods' residual functional capacity. The ALJ did not err, as he provided a reasoned explanation for omitting such limitations—his belief that Woods' statements about the severity of her limitations were not fully credible and were largely contrary to the medical evidence. Substantial evidence on the record as a whole supports his interpretation and/or application of the evidence. The undersigned so finds for the following reasons.

First, Woods has clearly experienced dramatic stressors in her life, arising from significant bereavement, her work, her health, and legal issues, and the ALJ properly acknowledged the stressors. The ALJ could and did find, though, that Woods' cognitive functioning remained stable and intact despite the significant stressors. She lives alone; manages her affairs; attends to her personal care, albeit slowly; and interacts with others, oftentimes outside her home. She also did not display any significant deficits in judgment or insight. The ALJ could additionally observe that the combination of medication management and therapy appears to effectively minimize her symptoms. In short, the ALJ could and did find unpersuasive Woods' representations as to the impact her mental impairment has on her ability to perform work-related tasks.

Second, the medical professionals who saw Woods at the VA facilities for her mental impairment noted her repeated complaints of difficulties sleeping, eating, and concentrating. The professionals also noted her repeated complaints of fatigue, sadness, nervousness, irritation, and fear. Upon examinations, though, she typically had a stable mood; was orientated to person, place, time, and situation; and had a logical/linear and goal directed thought process. Her memory, attention, and concentration were typically intact, and she did not display any significant cognitive deficits in her judgment or insight. Their findings and observations support the ALJ's finding that Woods' mental impairment does not adversely impact her ability to perform work-related tasks.

Third, Meadows saw Woods for therapy and/or counseling and also noted her repeated complaints of depression and anxiety. Meadows' mental status examinations of Woods, though, were typically unremarkable. Although Woods was depressed and her affect was typically sad and/or anxious, she was capable of focused, sustained attention; had no cognitive or comprehension impairment; and could follow directions. Meadows' findings and observations support the ALJ's finding that Woods' mental impairment does not adversely impact her ability to perform work-related tasks.

Fourth, Smith performed a mental diagnostic evaluation of Woods. Smith observed that Woods had an appropriate affect and communicated in an effective, focused, organized, and relevant manner. Woods exhibited no deficits in coping, concentration, or persistence, and completed cognitive tasks within a reasonable timeframe. Smith opined that Woods has no limitations performing basic work-like tasks. The ALJ found Smith's opinion mostly persuasive but only because Smith did not evaluate Woods' ability to perform work at all skill levels, only the basic work level. The ALJ noted that "[t]he findings made in [Smith's report] support a finding that [Woods] would be able to perform work at all skill levels, not just basic work." See Transcript at 33. Smith's findings and observations support the ALJ's finding that Woods' mental impairment does not adversely impact her ability to perform work-related tasks.

Last, the state agency medical examiners opined that Woods' mental impairments do not adversely impact her ability to perform work-related tasks. See Transcript at 82-88, 90-97. The ALJ relied, in part, upon the opinions in assessing Woods' residual functional capacity. Although the opinions are certainly not outcome determinative, they do support the ALJ's finding that Woods' mental impairment does not adversely impact her ability to perform work-related tasks.

"It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the [ALJ's] decision if that decision is supported by good reason and is based on substantial evidence." See Dillon v. Colvin, 210 F.Supp.3d 1198, 1201 (D.S.D. 2016). In fact, "[a] reviewing court may not reverse the [ALJ's] decision merely because substantial evidence would have supported an opposite decision." See Id. (internal quotations and citations omitted). The ALJ in this instance could find as he did at step two and in assessing Woods' residual functional capacity.

It is for the foregoing reasons that substantial evidence on the record as a whole supports the ALJ's findings, and he committed no legal error. The undersigned therefore recommends that the ALJ's decision be affirmed. Woods' complaint should be dismissed, all requested relief should be denied, and judgment should be entered for the Commissioner of the Social Security Administration.

DATED this 1st day of September, 2026.

UNITED STATES MAGISTRATE JUDGE